UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                          Case No. 19-20836

v.                                                   HON. Mark A. Goldsmith

D-4   HADIR ALTOON,                VIOLATION:  18 U.S.C. § 371
                                                                 (Conspiracy)

            Defendant.
_____/

**FIRST SUPERSEDING INFORMATION**

**The United States Attorney charges:**

**GENERAL ALLEGATIONS**

    At all times relevant to this information:

    1.    Defendant **RICHARD SOLLARS** was the elected Mayor of the City of Taylor, Michigan ("Taylor"), a local government entity that received federal assistance in excess of $10,000 in each of the calendar years 2015 through 2019.

    2.    Beginning in 2015, the City of Taylor began a program known as the Right of First Refusal program ("ROFR program").  Under the program, Taylor would exercise its right of first refusal to acquire tax-foreclosed properties in its city from the Wayne County Treasurer's Office.  Then, Taylor would select one or more developers to acquire, redevelop and resell the tax-foreclosed properties, which consisted of single-family homes, as well as commercial and vacant properties.

1

Taylor would enter into agreements with the developers, which required them to pay Taylor's purchase price for the properties, rehabilitate the properties and pay all fees associated with rehabilitation. After the developers fulfilled their obligations under the agreement, Taylor would issue a certificate of occupancy and transfer ownership of the properties to the developers. **RICHARD SOLLARS** had considerable control and influence over the ROFR program, including the decision of which developers were selected to participate.

3. Defendant **RICHARD SOLLARS** operated a political campaign fund entitled "Committee to Elect Richard (Rick) Sollars, Jr." ("the campaign fund").

4. Defendant **SHADY AWAD** was a businessman who owned a property development company called Realty Transition, LLC ("Realty Transition") in Taylor, Michigan. **AWAD** also owned a company called Downriver Management, LLC.

5. Defendant **JEFFREY BAUM** was an employee of Taylor who served as the manager of Taylor's Community Development Department. As manager of the Community Development Department, **BAUM** managed the ROFR Program. **BAUM** also served as the treasurer of **SOLLARS's** campaign fund.

6. Defendant **HADIR ALTOON** owned a convenience store called

Dominick's Market ("Dominick's") in Taylor, Michigan.  **ALTOON** also owned two property development companies called Abigail Investments and Taylor South Investments.

## COUNT ONE

(18 U.S.C. §§ 371 & 666(a) – Conspiracy to Commit Bribery
Concerning Programs Receiving Federal Funds)

**D-1 HADIR ALTOON**

7.Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count One as if fully set forth herein.

8.From in or about June 2017 through in or about February 2019, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants **RICHARD SOLLARS, SHADY AWAD, JEFFREY BAUM** and **HADIR ALTOON** did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other, and others, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, over $80,000 in cash payments to **SOLLARS** and over $4,000 in cash payments to **BAUM**, and other items of value, with the intent to influence and reward **RICHARD SOLLARS** and **JEFFREY BAUM** in connection with a business, transaction, or series of transactions of the

3

City of Taylor involving $5,000 or more, in violation of Title 18, United States Code, Section 666(a).

## MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

9. It was part of the conspiracy that, in exchange for items of value, **RICHARD SOLLARS** and **JEFFREY BAUM** would assist **SHADY AWAD** and **HADIR ALTOON** and other developers in obtaining properties owned by Taylor in connection with the City's ROFR program.

10. It was further part of the conspiracy that **RICHARD SOLLARS** would give **SHADY AWAD** exclusive access to Taylor's list of tax-foreclosed properties acquired by Taylor for its ROFR program before the list was made available to the public. As a result, **AWAD** was able to select the best properties for redevelopment.

11. It was further part of the conspiracy that **SHADY AWAD** and **HADIR ALTOON** would reward **RICHARD SOLLARS** for **SOLLARS'** assistance in obtaining properties under the ROFR program by providing **SOLLARS** with payments made on **AWAD's** credit cards which **HADIR ALTOON** transacted at Dominick's Market. In furtherance of the fraudulent scheme, **SHADY AWAD** would provide **HADIR ALTOON** his credit card information. **RICHARD SOLLARS** and/or **SHADY AWAD** would provide **HADIR ALTOON** with the amount **ALTOON** would charge to **AWAD's** credit card. **ALTOON** would then charge the amount indicated along with the 2.7 percent

4

transaction fee charged to Dominick's for each transaction. After conducting the transaction, **HADIR ALTOON** would give **SOLLARS** cash in the amount **SOLLARS** and/or **AWAD** had directed **ALTOON** to charge to **AWAD's** credit card. At **SOLLARS** and/or **AWAD's** direction, between 2017 and 2019, **ALTOON** conducted numerous transactions in this manner and gave **SOLLARS** cash totaling over $19,000, as set forth below:

| Transaction Date | Awad Credit Card No. | Amount |
|---|---|---|
| 10/24/2017 | US Bank ending 2015 | $1,775.01 |
| 11/11/2017 | US Bank ending 2031 | $5,301.23 |
| 1/10/2018 | Chase Bank ending 2628 | $1,200 |
| 10/5/2018 | US Bank ending 2023 | $3,075.75 |
| 11/28/2018 | US Bank ending 2023 | $3,150 |
| 12/13/2018 | US Bank ending 9413 | $1,060 |
| 1/29/2019 | US Bank ending 2023 | $4,120.01 |
|  |  | Total: $19,682.01[1] |

12. It was further part of the conspiracy that **RICHARD SOLLARS** and **JEFFREY BAUM,** with the assistance and approval of **RICHARD SOLLARS,** would accept thousands of dollars in cash from **HADIR ALTOON**, in exchange for providing **HADIR ALTOON** properties that the City of Taylor had originally transferred to **SHADY AWAD** under the ROFR program.

13. It was further part of the conspiracy that **SHADY AWAD** would

---

[1] Each transaction included the 2.7 percent transaction fee that Altoon incurred and retained from the amount in cash Altoon gave to Sollars.

5

provide items of value to **JEFFREY BAUM to** influence and reward **BAUM** for **BAUM's** assistance in obtaining properties under the ROFR program.

## OVERT ACTS

14. In furtherance of the unlawful conspiracy, and to effect its objectives, the defendants and their co-conspirators committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere.

15. On various occasions, between September 2017 and January 2019, **RICHARD SOLLARS** directed **JEFFREY BAUM** and **HADIR ALTOON** to prepare false Dominick's invoices for food catering services that were never provided by **HADIR ALTOON**. At **RICHARD SOLLARS'** direction, **JEFFREY BAUM** gave **SOLLARS** blank campaign fund checks, bearing **BAUM's** signature as treasurer of **SOLLARS'** campaign fund. **SOLLARS** would then direct **ALTOON** to make the checks payable to Dominick's in the amounts reflected in the false invoices. **ALTOON**, in turn, would cash the checks and give money back to **SOLLARS** in the form of cash and scratch-off lottery tickets in the same amount of the campaign fund checks **ALTOON** cashed. In total, **ALTOON** fraudulently cashed campaign checks totaling over $30,000, as set forth below:

| Date | Sollars' Campaign Check No. | False Purpose in Memo | Amount |
|---|---|---|---|
| 11/7/2017 | 1439 | Catering | $1,800 |

6

| | | | |
|---|---|---|---|
| 12/1/2017 | 1446 | Employee Holiday Party | $4,250 |
| 12/15/17 | 1451 | Employee Party Food | $4,250 |
| 12/15/17 | 1452 | Catering Superbowl City Hall | $5,600 |
| 2/12/18 | 1462 | S.O.C. 2018[2] | $4,274 |
| 6/29/2018 | 1508 | TSF Sponsors | $3,750 |
| 10/17/18 | 1540 | Blank | $3,572.49 |
| 12/10/18 | 1557 | Holiday Party Emp | $4,250 |
| 1/3/2019 | 1558 | S.O.C. 2019 | $4,575 |
| | | | Total: $36,321.49 |

16. Between 2017 and 2019, **RICHARD SOLLARS** directed **SHADY AWAD** to provide **AWAD's** credit card information to **HADIR ALTOON**, who was interested in acquiring tax-foreclosed properties under the City's ROFR program. **SOLLARS** then directed **HADIR ALTOON** to charge various amounts, totaling approximately $19,000, to **AWAD's** credit card. At **SOLLARS's** direction, **HADIR ALTOON** gave **SOLLARS** cash in the amounts **HADIR ALTOON** charged to **AWAD's** credit card.

17. Between 2017 and 2019, at the direction of **RICHARD SOLLARS, HADIR ALTOON,** accepted checks made payable to Dominick's that were provided by donors to **SOLLARS'** campaign fund purportedly for catering services provided to **SOLLARS'** campaign that were never provided nor intended to be provided by **ALTOON.** At **SOLLARS'** direction, **ALTOON** cashed the donors'

---

[2] S.O.C. is an abbreviation for State of the City for which Alton never actually rendered any catering services during any year reflected in the chart above.

7

checks and gave **SOLLARS** cash and/or scratch-off lottery tickets in the amount of the donors' checks, as set forth below:

| Date | Donor | Amount |
| --- | --- | --- |
| 10/6/2017 | Realty Transition | $1,300 |
| 10/31/2017 | AA | $1,775 |
| 11/21/2017 | AA | $2,000 |
| 12/04/2017 | PSG | $500.00 |
| 12/08/2017 | VPM | $500.00 |
| 12/15/2017 | R-CIS | $1,000 |
| 12/18/2017 | VPM | $500.00 |
| 10/19/2018 | AA | $2,000 |
| 10/19/2018 | PSG | $1,000 |
| 10/23/2018 | MRS | $500.00 |
| 10/23/2018 | ED | $1,000 |
| 11/13/2018 | VPM | $500.00 |
|  |  | Total: $12,575 |

18.     In or about 2017, **JEFFREY BAUM** met with **HADIR ALTOON** at Dominick's and transferred two of Taylor's tax-foreclosed properties that the City of Taylor originally awarded to another developer to **HADIR ALTOON**. Around that same time in 2017, **HADIR ALTOON** paid **BAUM** a $1,000 cash kickback.

19.     On December 12, 2017, **HADIR ALTOON** exchanged text messages with **RICHARD SOLLARS** in which **SOLLARS** advised **ALTOON** that **BAUM** would be "stopping by" Dominick's to provide a campaign fund check to cover a false invoice for catering services that **SOLLARS** wanted **ALTOON** to create. **SOLLARS** told **ALTOON**, "He [**BAUM**] needed an invoice for the party. I am

8

checking with him now on the amount." **ALTOON** responded, "OK," and asked $2,925.00 … Or $4,250.00." **SOLLARS** responded back, "[N]o I will stop by later."

20. In December 2017, with **RICHARD SOLLARS** and **JEFFREY BAUM's** assistance and approval, **HADIR ALTOON** created a false invoice in the amount of $4,250 for catering services to **SOLLARS's** campaign fund purportedly for a Christmas party for the City of Taylor that had already been paid by Taylor under an invoice for an identical event, in the amount of $2,925, on or about December 7, 2017. On December 15, 2017, a check in the amount of $4,250 from **RICHARD SOLLARS'** campaign fund was issued to Dominick's for "employee party food." Around that same time, **ALTOON** cashed the check and gave **SOLLARS** money in the form of cash and scratch-off lottery tickets.

21. In or about December 2017, **HADIR ALTOON** gave **JEFFREY BAUM** three $250 gift cards.

22. In or about July 2018, **HADIR ALTOON**, with the knowledge and approval of **RICHARD SOLLARS**, **HADIR ALTOON** gave **JEFFREY BAUM** approximately $4,500 in cash, to reward **BAUM** for helping **HADIR ALTOON** obtain nine properties from **SHADY AWAD** that the City of Taylor had originally transferred to **AWAD** under the ROFR Program.

23. In or about July 2018, **RICHARD SOLLARS** told **HADIR ALTOON**

9

not to "spoil" **JEFFREY BAUM** by paying him too large of kickbacks related to the properties **HADIR ALTOON** received from the ROFR program.

24. In furtherance of the fraudulent scheme, on August 27, 2017, **SHADY AWAD** quit claim deeded to **ALTOON** one property that the City of Taylor had originally transferred to **AWAD** under the ROFR program.

25. In furtherance of the fraudulent scheme, on December 5, 2018, **SHADY AWAD** quit claim deeded to **ALTOON** one property that the City of Taylor had originally transferred to **AWAD** under the ROFR program.

26. In furtherance of the fraudulent scheme, on February 8, 2019, **SHADY AWAD** quit claim deeded to **ALTOON** five properties that the City of Taylor had originally transferred to **AWAD** under the ROFR program.

27. In July 2018, **HADIR ALTOON** cashed five blank money orders, totaling $3,000, provided by **RICHARD SOLLARS** and, in turn, gave **SOLLARS** $3,000 in cash.

28. In October 2018, **HADIR ALTOON** gave **JEFFREY BAUM** $5,000 in cash for the benefit of **SOLLARS'** campaign golf event.

29. In or about December 2018, **HADIR ALTOON** again gave **JEFFREY BAUM** three $250 gift cards.

30. On or about December 24, 2018, **HADIR ALTOON** gave **JEFFREY BAUM** $500 in cash.

# **FORFEITURE ALLEGATION**

(Criminal Forfeiture – 18 U.S.C. § 981(a)(1)(C)
and 28 U.S.C. § 2461)

The allegations contained in this First Superseding Information are incorporated herein by this reference for the purpose of alleging forfeiture.

Upon conviction for violating 18 U.S.C. § 371 (conspiracy), set forth in this Superseding Information, Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, pursuant to 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c).

Such property includes, but is not limited to, a forfeiture money judgment in an amount to be proved in this matter representing the total amount of proceeds obtained as a result of Defendant's violation of 18 U.S.C. § 371.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), if the property described above as being subject to forfeiture, as a result of any act or omission of the defendant(s):

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property that cannot be subdivided without difficulty;

11

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek to forfeit any other property of the defendant up to the listed value as a substitute asset.

SAIMA S. MOHSIN
Acting United States Attorney

*s/Dawn N. Ison*
DAWN N. ISON
Assistant United States Attorney

Dated: October 5, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>19-20836 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes   ☒ No | AUSA's Initials:   *s/DNI* |

**Case Title:** USA v. D-4   HADIR ALTOON

**County where offense occurred:** Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

____Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:**                    ]
____Indictment/ ✓ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** 19-20836              **Judge:** Mark A. Goldsmith

☐ Corrects errors; no additional charges or defendants.
☒ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-4 HADIR ALTOON | 18 USC §§ 371 & 666(a) | N/A |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

October 5, 2021
Date

*s/Dawn N. Ison*
DAWN N. ISON
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9567
E-Mail address: Dawn.Ison@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.